David P. Myers (SBN 206137)
Ann Hendrix (SBN 258285)
John M. Tomberlin, Jr. (SBN 310435)
THE MYERS LAW GROUP
327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Telephone: 909-919-2027
Facsimile:  888.375.2102

Attorneys for Plaintiff,
NICOLE JARCZEWSKI
D. CHAD ANDERTON, Bar No. 199922
CAnderton@littler.com
NOLAN MCCREADY, Bar No. 300684
NMccready@littler.com
LITTLER MENDELSON, P.C.
2050 Main Street, Suite 900
Irvine, CA  92614
Telephone: 949.705.3000
Facsimile:  949.724.1201

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE JARCZEWSKI,<br><br>                        Plaintiff,<br><br>          v.<br><br>UNITED PARCEL SERVICE, INC.,<br>an Ohio Corporation and DOES 1<br>through 10, inclusive,<br><br>                        Defendant. | **Case No.  5:19−cv−00409−JGB−SP**<br>**ASSIGNED TO THE HONORABLE**<br>**JUDGE JESUS G. BERNAL**<br><br>**JOINT RULE 26(F) REPORT**<br><br>Scheduling Conference<br>Date:              May 6, 2019<br>Time:              11:00 Am<br>Location:        Courtroom 1<br>                      3470 Twelfth Street<br>                      Riverside, CA 92051<br><br><br>Trial Date:  N/A<br>Complaint Filed SBSC:  January 18, 2019 |

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 26-1 of the Local Rules of the United States District Court, Central District of California, and the Court's Scheduling Meeting of Counsel Order (Dkt. No. 13), Plaintiff Nicole Jarczewski ("Plaintiff") and Defendant United Parcel Service, Inc. ("UPS") hereby submit their Joint Rule 26(f) Conference Report after having met and conferred on the issue contemplated in Rule 26(f), Local Rule 26-1, and the Court's Order.

a.    **Statement of the Case**

    **I.   Plaintiff's Position**

Plaintiff is a 34-year-old woman who suffers from rheumatoid arthritis. During Plaintiff's employment, her arthritis rose to the level of being a disability. UPS began employing Plaintiff on about June 27, 2004, initially as a center clerk, then as a driver in 2015. When Plaintiff became a driver, her hours swelled and often resulted in her working in excess of nine hours per day and sometimes 11 hours a day. Though she completed her duties, theses long hours caused her fatigue and arthritis flare-ups.

On about September 14, 2016, Plaintiff provided a doctor's note to her supervisor requesting she work only eight hours a day and five days a week as an accommodation for her disability. The doctor's note, and a completed accommodation form, was also faxed to UPS's corporate office. UPS provided Plaintiff no accommodation at that time and did not engage in the interactive process – she continued working similar hours.

On about November 11, 2016, Plaintiff injured her back while continuing to struggle with the workload in excess of the eight-hour restriction designated in her doctor's note. Plaintiff filed for worker's compensation and was placed on light duty restriction including: no heavy lifting; having an assistant to help with lifting and other route tasks; and working shorter hours. Plaintiff worked these light duties for approximately two weeks until injuring her shoulder on about December 2, 2016.

Following Plaintiff's shoulder injury, she was placed on Temporary Alternate Work light duty and performed office tasks in the dispatch office for eight hours a day. On January 11, 2017, Plaintiff met with UPS local and corporate management and was informed they could not accommodate her. Two weeks later, the Temporary Alternate Work assignment expired and Plaintiff has been on leave ever since.

While on leave, Plaintiff has received the runaround ever since. This has included her being given wrong numbers, being asked to repeatedly resubmit documents, and going months without an update. Plaintiff, through counsel, also requested her personnel file in March 22, 2018 and in violation of Cal. Labor Code §1198.5 UPS did not provide Plaintiff's personnel file.

**II.  Defendants' Position**

Defendant denies plaintiff's claims. Defendant accommodated plaintiff and in no way discriminated against her or retaliated against her. During the relevant time period, Plaintiff filed a workers' compensation claim.  In the workers' compensation proceeding she was found to be permanent and stationary as of June 2018.  There will be an issue as to whether Plaintiff sought an accommodation from that point.

b.    **Subject Matter Jurisdiction**

    **I.   Plaintiff's Position:** Plaintiff does not concede subject matter jurisdiction exists.

    **II.   Defendant's Position:**

        This Court has diversity jurisdiction over this case.

c.    **Legal issues**

    **I.   Plaintiff:**

    (1)     Did UPS engage in disability discrimination, fail to accommodate a disability, and fail to engage in the interactive process by ignoring Plaintiff doctor-imposed work restrictions in September 2016? Did UPS continue in this illegal

conduct when it refused to accommodate Plaintiff in early-2017 after she was further injured in late-2016 due to UPS's failure to accommodate her.

(2)     Did UPS refusal to provide accommodations to Plaintiff requested after she notified UPS of her disability and again after she was injured following that refusal qualify as retaliation? Under the same theory, did UPS retaliate when it refused to allow Plaintiff to continue working under Temporary Alternate Light duty conditions that she was temporarily granted or return to the position she held prior to being a driver?

(3)     Has UPS failed to take adequate or meaningful step necessary to prevent, investigate, and otherwise take such actions as were necessary to stop Plaintiff from suffering from discrimination and harassment?

(4)     Did UPS violate Cal. Labor Code §1198.5 by failing to provide Plaintiff her personnel file within 30 days her request made via certified mail by counsel?

**II.  Defendant:**

The legal and mixed issues include whether Defendant accommodated Plaintiff and engaged in the interactive process, as well as whether Defendant discriminated against plaintiff during the relevant time period under the applicable statutes of limitation.

d.     **Parties, Evidence, Etc.:**

**I.   Plaintiff's Position**

(1)     Plaintiff is a 34-year-old woman who suffers from rheumatoid arthritis that was severely and likely permanently aggravated by injuries to her back and shoulder caused by overexertion in service to UPS. Plaintiff intends to present expert evidence to show that it is more likely than not that were UPS to respected her September 2016 work restrictions as a reasonable accommodation while engaging in

the interactive process, Plaintiff would still be employed at UPS. Instead, Plaintiff suffers from acutely magnified symptoms of her disability which harm her quality of life and limit her ability to do jobs for UPS or another employer that require standing or sitting for extended times.

(2)     UPS Person Most Qualified on topics related to: UPS policy on compliance with requests for personnel files, UPS knowledge of Plaintiff's disability, UPS actions to accommodate Plaintiff's disability, UPS efforts to engage in the interactive process, UPS policies and procedures regarding employees with disabilities requiring accommodation, UPS positions available to Plaintiff with accommodations, Plaintiff's hours worked and leave taken.

(3)     Dr. Yolanda T. Grady 13768 Roswell Ave, Ste. 202 Chino, CA 91710. Evaluated Plaintiff in May 2016 and competed a Certification of Health Care Provider for Employee's Serious Health Condition (FMLA) that found she would have "lifetime" serious medical condition from Rheumatoid Arthritis but was "not unable to perform any of her job functions due to the condition." Also provided September 14, 2016 work restriction and request for accommodation.

(4)     Drs. Wade Faeber, Aaron Coppelson, Donna Cloughen, Tony Hunt Concentra Occupation Medical Center, 9405 Fairway View Place Rancho Cucamonga, CA 91730. Provided treatment to Plaintiff for her disability and aggravating injuries sustained while working for UPS.

(5)     Brenda Hellerud, UPS HRSC Occupational Health Supervisor. Received notification of Plaintiff's work restrictions and need for accommodation on September 21, 2016 but provided no immediate accommodation as needed.

(6)     Russell McDaniel – Mr. McDaniel served as Plaintiff's driver helper while on light duty, including the day her shoulder was injured.

(7)     Kenneth Perez – Plaintiff's on Road Supervisor. Mr. Perez was Plaintiff's direct supervisor and on road instructor during probationary period. Also acting Center manager wherever Chance Moses was out.

(8)     Lori Norman – Plaintiff's prior coworker at UPS. Served as a driver at the same time as Plaintiff and they typically covered each other's routes when the other was off. Ms. Norman suffered a shoulder.

(9)     Kristopher King – Plaintiff's long-time coworker who also transitioned through multiple UPS roles before becoming a driver. Mr. King was also injured while working for UPS as a driver and shortly after stopped working at UPS.

(10)   UPS Human Resource Representatives Plaintiff interacted with in reporting her disability, requesting accommodation, and seeking a new position – Plaintiff recalls a woman named Carmen (LNU) and others that will be identified in discovery.

(11)   The evidence in this case will be of five types: medical records demonstrating when Plaintiff received her work restrictions, conversations written and oral between Plaintiff and UPS regarding her work restrictions and requests for accommodation, evidence of Plaintiff's income at UPS and her income since her injury and being made inactive by USP, and expert testimony regarding Plaintiff's lost income and the compounding of Plaintiff's injuries due to UPS's decision to ignore Plaintiff's submitted work restrictions.

**II.  Defendants' Position**

Defendant's position is set forth above.  Defendant's witnesses will include plaintiff, her supervisors and the Human Resources professionals involved regarding her accommodations and interactive process.  Plaintiff currently remains an employee of UPS.

e.  **Damages:**

  **I.  Plaintiff's Position**

Plaintiff was a woman working in the prime of her life in her first serious job after high school. With UPS she was a union member with excellent benefits and a salary of approximately $1,317.66 per week (calculated by disability benefits provider February 7, 2017) or $68,518.32 annually. Plaintiff would still be enjoying those benefits and salary now, as evidenced by her twelve years of employment before her injury. Instead of working towards advancement and retiring with UPS and enjoying a profitable pension, Plaintiff's disability needs were ignored resulting in catastrophic injury to her for which UPS – a global company with $72 billion in revenue and 399,000 US employees – claims they cannot find a position for her to fill after over two years of 'looking.'[1]

Plaintiff has suffered tremendous emotional distress from the exacerbation to her disability caused by UPS ignoring her doctor-ordered work restrictions (e.g. being unable to engage in life pursuits such as hiking and dancing). Plaintiff's emotional distress was further added to by UPS's obfuscated process both before and after she was placed on unpaid leave; to this day, UPS has not informed her of a single position she is capable of working in.

Should this matter go to trial, Plaintiff will seek in excess of two million dollars in lost wages and benefits, four million dollars in emotional distress, and punitive damages. Two million dollars is a reasonable expectation for a career track position in an international organization with room for advancement, and strong benefits including a pension given Plaintiff's young age and inability to work given UPS's failure to abide by Plaintiff's work restrictions. Plaintiff has documented and

---

[1]https://pressroom.ups.com/pressroom/ContentDetailsViewer.page?ConceptType=FactSheets&id=1426321563187-193

consistent treatment for the emotional distress that has been caused UPS conduct described above.

### II.   Defendants' Position

Defendant denies plaintiff's claims regarding damages.  Indeed, Defendant accommodated plaintiff throughout, and as of June 2018 she was deemed permanent and stationary in the workers' compensation proceeding and is unable to return to her previous job.  There is an issue as to whether she has sought an accommodation since that time.

f.   **Insurance**

### I.   Plaintiff's Position

Plaintiff is unaware of any applicable insurance.

### II.   Defendant's Position

There is no insurance for the claims in this suit.

g.   **Motions**

### I.   Plaintiff's Position

Plaintiff does not anticipate any motions to add or other parties or claims, to file amended pleadings, or to transfer venue. However, discovery is pending and the parties reserve the rights afforded under FRCP 15 and 19 to amend or join new parties where appropriate.

### II.   Defendant's Position

Defendant intends to file a motion for summary judgment.

h.   **Manual for Complex Litigation**

### I.   Plaintiff's Position

Plaintiff does not believe this action warrants application of the Manual.

### II.   Defendant's Position

Defendant does not believe this action warrants application of the Manual for Complex Litigation.

8

i.   **Status of Discovery**

   **I.   Plaintiff's Position**

   On April 19, 2019, Plaintiff served UPS with Requests for Production of Documents and a Notice of Deposition for UPS' Person Most Knowledgeable. Plaintiff will exchange initial disclosures in accordance with FRCP Rule 26.

   **II.   Defendant's Position**

   Defendant will exchange initial disclosures in accordance with FRCP Rule 26. Further, Defendant will serve discovery requests on plaintiff in the next one to two weeks.

j.   **Discovery Plan**

   **I.   Plaintiff's Position**

   Plaintiff anticipates identifying additional deponents after receiving written discovery but is limited in her ability to forecast which UPS employees will be necessary due to not receiving her personnel file. Plaintiff also anticipates further written discovery including Requests for Admission and Interrogatories. Plaintiff intends to take discovery regarding the facts, witnesses, and documents supporting or disproving Plaintiff's claims for discrimination, retaliation, failure to engage in the interactive process, failure to accommodate, failure to prevent discrimination and retaliation, and violation of Cal. Labor Code §1198.5. This is anticipated to include the deposition of Defendant's Person Most Knowledgeable, the depositions of Defendant's employees, including but not limited to Brenda Hellerud and Russell McDaniel, and Defendant's written policies and practices – subject to modification once the parties engage in discovery. Plaintiff will likely utilize her primary treating physician as a percipient and expert witness regarding her condition before and after Plaintiff's work restriction. Plaintiff may also call an expert witness regarding expected lifetime earnings, and an expert regarding causation of Plaintiff's injuries.

## II.    Defendant's Position

Defendant will serve written discovery and will take plaintiff's deposition. Defendant may also take the depositions of plaintiff's medical providers and family members.

k.    **Discovery Cut-Off**

### I.    Plaintiff's Position

Plaintiff accepts the dates as calculated in Exh. A, attached hereto.

### II.    Defendant's Position

Defendant accepts the dates specified in Exhibit A attached hereto.

l.    **Expert Discovery**

### I.    Plaintiff's Position

Plaintiff will likely utilize her primary treating physician as a percipient and expert witness regarding her condition before and after Plaintiff's work restriction. Plaintiff may also call an expert witness regarding expected lifetime earnings, and an expert regarding causation of Plaintiff's injuries.

### II.    Defendant's Position

Defendant reserves the right to call experts in rebuttal to plaintiff's designated experts.  Otherwise, defendant does not see the need for experts in this case.

m.    **Dispositive Motions**

### III.    Plaintiff's Position

Plaintiff does not at this time anticipate filing a dispositive motion.

### IV.    Defendant's Position

Defendant intends to file a motion for summary judgment.

n.    **Settlement/Alternative Dispute Resolution (ADR)**

### V.    Plaintiff's Position

Plaintiff is open to private mediation to be completed by November 1, 2019.

### VI.     Defendant's Position

Defendant is open to private mediation.

o.     **Trial Estimate**

### VII.    Plaintiff's Position

Plaintiff anticipates that due to the number of witnesses and likelihood of multiple experts being necessary to demonstrate causation of Plaintiff's injuries this trial will take from 15 to 20 days of jury trial.

### VIII.   Defendant's Position

Defendant believes the trial of this matter should take no more than four to five days.

p.     **Trial Counsel**

### IX.     Plaintiff's Position

David P. Myers and John M. Tomberlin of The Myers Law Group.

### X.      Defendant's Position

Chad Anderton and Nolan McCready of Littler Mendelson.

q.     **Independent Expert or Master**

### XI.     Plaintiff's Position

Plaintiff does not anticipate a need for an independent expert or master.

### XII.    Defendant's Position

Defendant does not anticipate a need for an independent expert or master.

r.     **Timetable**

Exh. A, attached.

s.     **Other Issues**

A.     The parties join in requesting the Court's order under Rule 16(c) providing that any motion under Rule 56 for Summary Judgment shall provide

1  to the Responding Party three weeks for a Response and two weeks for a Reply

2  from the moving party.

3    B.  The parties do not believe that it is necessary at this time for the Court to

4  issue any other orders under Rule 26(c) or under Rule 16(b) and (c).

5

6  DATED:  April 22, 2019     **THE MYERS LAW GROUP**

7            By: /s/ John Tomberlin

             John M. Tomberlin, Jr.

8               Attorneys for Nicole Jarczewski

9

10 DATED: April 22, 2019     **LITTLER MENDELSON**

          By: /s/ D. Chad Anderton

11              D. Chad Anderton

             Attorneys for Defendants

12              UNITED POSTAL SERVICE

13

14

15

16 **Pursuant to Local Rule 5-4.3.4(a)(2), I, John Tomberlin, hereby confirm that all**

17 **other signatories listed, and on whose behalf this filing is submitted, concur in the**

18 **filing's content and have authorized the filing.**

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**SCHEDULE OF PRETRIAL & TRIAL DATES WORKSHEET**

Case No.: 5:19-CV-00409       Case Name: _Nicole Jarczewski v. UPS, Inc. et al._

| MATTER | JOINT REQUESTED DATE or PLNTF/DEFT REQUESTED DATE | TIME |
|---|---|---|
| **TRIAL** [ ] Court [x] Jury<br>Duration Estimate: Plaintiff estimates 15-20 days; Defendant estimates 4-5 days | April 13, 2020 | 9:00 am |
| **FINAL PRETRIAL CONFERENCE ("FPTC")** 4 wks before trial | March 16, 2020 | 11:00 am |

| MATTER | TIME COMPUTATION | JOINT REQUESTED DATE or PLNTF/DEFT REQUESTED DATE |
|---|---|---|
| Amended Pleadings and Addition of Parties Cut-Off (includes hearing of motions to amend) | 90 days after scheduling conf | August 4, 2019 |
| Non−Expert Discovery Cut-Off (includes hearing of discovery motions) | at least 14 wks before FPTC | December 9, 2019 |
| Motion Cut-Off (filing deadline) | at least 13 wks before FPTC | December 16, 2019 |
| Initial Expert Disclosure & Report Deadline | at least 9 wks before FPTC | January 13, 2020 |
| Rebuttal Expert Disclosure & Report Deadline | at least 5 wks before FPTC | February 10, 2020 |
| Expert Discovery Cut-Off (includes hearing of discovery motions) | at least 3 wks before FPTC | February 24, 2020 |
| Settlement Conference Completion Date | at least 4 wks before FPTC | February 17, 2020 |
| Motions in Limine Filing Deadline | at least 3 wks before FPTC | February 24, 2020 |
| Opposition to Motion in Limine Filing Deadline | at least 2 wks before FPTC | March 2, 2020 |
| Other Dates: | at least 90 days after complaint served (unless longer time justified) | |
| Deadline to Mediate | | November 1, 2019 |